

# HELEN F. DALTON & ASSOCIATES, P.C.
## ATTORNEYS AT LAW

80-02 Kew Gardens Road, Suite 601, Kew Gardens, NY 11415

Tel. (718) 263-9591 Fax. (718) 263-9598

April 26, 2023

<u>Via ECF</u>
The Honorable Judge Taryn A. Merkl
United States District Court
Eastern District of New York
225 Cadman Plaza
Brooklyn, New York 11201

Re: **<u>Valladares, et al. v. Cross-City Inspection Services, Inc., et al.</u>**
**20-CV-4511 (TAM)**

Dear Judge Merkl:

Our office represents Cruz Sanchez Valladares, Alex Alfaro Sebeda, Cesar Danilo Martinez, Delmer Joel Guifarro, Ismael Matute, Jose Ramirez Sanchez, and Opt-in Plaintiffs Gerson Castellanos, and Francisco Zamudio Hernandez (collectively, the "Plaintiffs") and we submit this motion jointly with counsel for Crosscity Inspection Services, Inc., Huge Construction LLC, and Meiqiao LLC and Weihong Hu (collectively, "the Defendants") (collectively with Plaintiffs, "the Parties"), requesting the Court's approval of the parties' Settlement Agreement. The terms of the parties' Settlement Agreement, attached hereto as **Exhibit 1**, were reached following a Court-annexed mediation held on February 22, 2022, a Settlement Conference before Your Honor on September 29, 2022, and months of continued negotiations between the parties thereafter.

The parties submit this motion in support of their position that the Settlement Agreement is fair and reasonable and does not raise any of the concerns cited in *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015). The parties address the monetary and non-monetary terms as well as Plaintiffs' counsel's requested attorneys' fees and respectfully request that the Court So Order or approve the Settlement Agreement.

**I.      <u>The Monetary Terms of the Settlement Agreement are Fair and Reasonable</u>**

**a. The Settlement Amount**

The parties agreed to resolve this matter for the amount of $150,000.00 payable to the Plaintiffs, inclusive of attorneys' fees (the "Settlement Amount"), which are addressed below.

### b. Background

Plaintiffs brought this action under the Fair Labor Standards Act ("FLSA") and New York Labor Laws ("NYLL"), alleging that they were not paid proper overtime wages when required to work in excess of forty (40) hours per week.

Plaintiffs are eight individuals who were formerly employed by Defendants as cement masons, laborers, concrete workers, and carpenters. Plaintiffs' periods of employment ranged from six (6) months to approximately two (2) years.

In general, Plaintiffs alleged that they regularly worked fifty-eight (58) to sixty-three (63) hours per week but that they were compensated the same regular hourly rate of pay for all hours worked. Plaintiffs alleged that they received rates of pay between $20.00 to $30.00 per hour and that they received these regular hourly rates of pay for all hours worked, including those in excess of 40 hours per week. Defendants denied Plaintiffs' allegations.

### c. The Settlement Amount is Fair and Reasonable

FLSA claims may only be settled and dismissed with prejudice under Rule 41 if they are approved by the Court. *Cheeks v. Freeport Pancake House, Inc.,* 796 F.3d 199, 206-207 (2d Cir. 2015). "Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes." *Kochilas v. Nat'l Merch. Servs., Inc.*, 2015 WL 5821631, at *7 (E.D.N.Y. Oct. 2, 2015) (citation omitted). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of settlement." *Id*. (citation omitted). Furthermore, "[i]f the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved." *Id*. (citations omitted). "Generally, there is a strong presumption in favor of finding a settlement fair, as the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Lliguichuzhca v. Cinema 60, LLC,* 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) (citation and internal quotation marks omitted).

Plaintiffs and Defendants acknowledged their respective litigation risks, and neither side was assured of an outcome in their favor. During the course of the litigation, Defendants produced time and pay records, which both Parties carefully analyzed and reviewed. Plaintiffs and Defendants understood that the factual records, as well as their genuine, bona fide factual disputes over the hours Plaintiffs worked and the amounts Plaintiffs were paid, created potential risks for their respective cases. Plaintiffs also considered Defendants' financial status, including whether Defendants would be able to pay a larger judgment even if Plaintiffs were successful at trial. Moreover, Plaintiffs also considered the time value of guaranteed money in the near future as opposed to the uncertainty of trial at a much later date. After considering the risks outlined above, the Parties agreed to settle this matter for $150,000.00.

The Parties believe that the Settlement Amount is reasonable considering the claims and defenses asserted, Defendants' record production, and the fact that the terms of the Settlement Agreement was achieved only after a Court-annexed mediation, Settlement Conference before the Court, and continued negotiations between experienced counsel.

Both sides made compromises on their positions in order to achieve a fair and reasonable settlement. Based on their allegations, Plaintiffs calculated their combined unpaid overtime wage claim to be approximately $130,000.00, not including the possibility of liquidated damages and statutory penalties under NYLL. Defendants' position was that, based on the time and pay records, Plaintiff's claims were inflated and estimated Plaintiffs' damages to be approximately $20,000, not including the possibility of liquidated damages and statutory penalties under NYLL. Thus, the Settlement Amount allows Plaintiffs to recover a substantial portion of their alleged unpaid wages – a figure that was strongly disputed by Defendants.

For the reasons described above, the Parties agree that the Settlement Amount represents a fair resolution over the outstanding factual disputes that would not have likely been resolved until the time of trial.

## II. The Non-Monetary Terms of the Settlement Agreement are Fair and Reasonable

"In FLSA cases, courts in this District routinely reject release provisions that 'waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues.'" *Gurung v. White Way Threading LLC*, 226 F. Supp. 3d 226, 228 (S.D.N.Y. 2016) (quoting *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 181 (S.D.N.Y. 2015)). Moreover, "[i]n the context of an FLSA case in which the Court has an obligation to police unequal bargaining power between employees and employers, such broad releases are doubly problematic." *Martinez v. Gulluoglu LLC*, No. 15 Civ. 2727 (PAE), 2016 WL 206474, at *2 (S.D.N.Y. Jan. 15, 2016) (quoting *Camacho v. Ess-A-Bagel, Inc.*, No. 14-cv-2592 (LAK), 2014 WL 6985633, at *4 (S.D.N.Y. Dec. 11, 2014)).

Here, the release in Paragraph 6 of the Settlement Agreement ("Release") is appropriately limited to claims under the FLSA and NYLL and other related wage-and-hour claims that could have been asserted in this litigation. The Release does not raise any concerns regarding unequal bargaining power between Plaintiffs and Defendants and the Release is not overbroad such that there is a concern that Plaintiffs are releasing any and all possible claims against Defendants, including claims completely unrelated to the claims asserted in this action.

Furthermore, the Settlement Agreement does not contain any confidentiality provision that would otherwise preclude the parties from openly discussing their experiences litigating this matter as rejected by *Cheeks*.

As the Release is carefully drafted to comply with Second Circuit case law in FLSA matters and there is no confidentiality clause contained in the Settlement Agreement, the parties' position is that the non-monetary terms of the Settlement Agreement are also fair and reasonable and comport with the standards articulated in *Cheeks*.

## III. Distribution to the Plaintiffs and Requested Attorneys' Fees and Expenses

### a. Distribution to the Plaintiffs

The parties agreed to a global settlement of $150,000.00 to resolve all claims asserted in this action. If the Agreement is approved by the Court, Plaintiffs will recover an aggregate amount of $99,103.00, after requested attorneys' fees and reimbursement of expenses. Each Plaintiff will receive an amount based on their individual calculations, accounting for the dates of their

employment, hours worked, pay received as well as our analysis of the strengths and weaknesses of each Plaintiff's claim based on the information and documentation provided by Defendants. Those individual amounts are identified in Exhibit A of the Settlement Agreement.

### b. Plaintiffs' Counsel's Requested Attorneys' Fees and Expenses

Plaintiffs' counsel respectfully requests $1,346.00 for identifiable expenses, which include:

- the Eastern District of New York filing fee in this matter: $402.00
- the costs of attempted and actual service of the Summons and Complaint on all Defendants: $644.00
- the costs of the Court-annexed mediation: $300.00

Plaintiffs' counsel respectfully requests one-third of the settlement amount less the above expenses ($148,654.00), or $49,551.00 in attorneys' fees, as agreed upon in the Plaintiffs' retainer agreements with this firm. Therefore, if this request is approved, the total amount to be paid to the attorneys for their fees and expenses in this matter is $50,897.00.

As such, the settlement funds as broken down into component parts is as follows:

**Settlement Amount:** $150,000.00
**Attorneys' Expenses:** $1,346.00
**Net Settlement Amount:** $148,654.00 ($150,000.00 - $1,346.00)
**Requested Attorneys' Fees:** $49,551.00 ($148,654.00 / 3)
**Total payable to Attorneys:** $50,897.00 ($49,551.00 + $1,346.00)
**Total payable to Plaintiff:** $99,103.00 ($150,000.00 - $50,897.00)

Our office and the Plaintiffs have retainer agreements that are reduced to writing and are signed by the Plaintiffs. Attorneys' fees of 33% on FLSA and NYLL claims are routinely approved by courts in the Second Circuit. *See, e.g., Calle v. Elite Specialty Coatings Plus, Inc.,* 2014 U.S. Dist. LEXIS 164069 (E.D.N.Y. Nov. 19, 2014) (approving settlement of FLSA and NYLL claims stating that a "one-third contingency fee is a commonly accepted fee in this Circuit"); *Rangel v. 639 Grand St. Meat & Produce Corp.,* 2013 U.S. Dist. LEXIS 134207 (E.D.N.Y. Sept. 19, 2013). Courts in this District typically approve a fee of one-third or less of the settlement amount. *See Santos v. Yellowstone Props, Inc*., 2016 WL 2757427 at *4 (S.D.N.Y. May 10, 2016).

This request for attorneys' fees is supported by the work performed by Plaintiffs' counsel and the recovery secured through their efforts and the fee requested is reasonable in relation to the recovery received by Plaintiffs. Furthermore, in support of Plaintiffs' counsel's request for attorneys' fees, we attach hereto as **Exhibit 2**, Plaintiffs' counsel's billing records, qualifications and lodestar calculation for the Court's review.

### IV. Closing

In closing, the parties believe that the Settlement Amount and the terms of the Settlement Agreement are fair and reasonable. The settlement was the product of good faith negotiations between experienced and competent counsel and the terms of the Settlement Agreement comport with Second Circuit case law. As such, we respectfully request that the Court approve the

Settlement Agreement in its entirety. We thank the Court for its consideration and remain available to provide any additional information.

                  Respectfully submitted,

                  *James O'Donnell*
                  James O'Donnell, Esq.